# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Morfin*, 2012 IL App (1st) 103568

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NICHOLAS MORFIN, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-10-3568 |
| Filed | November 30, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The mandatory life sentence imposed on defendant for two counts of first degree murder committed when he was a minor was vacated and the cause was remanded for a new sentencing hearing on the ground that pursuant to *Teague*, *Miller* is retroactively applicable to defendant's case on collateral review, and under *Miller*, a new sentencing hearing was required for defendant, and at the hearing, possible sentences include natural life, 20 to 60 years, or up to 100 years if an extended-term finding is made. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 96-CR-1838; the Hon. Arthur F. Hill, Jr., Judge, presiding. |
| Judgment | Vacated and remanded with directions. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, and Jonathan Steffy, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Michelle Katz, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE SALONE delivered the judgment of the court, with opinion.
Justice Steele concurred in the judgment and opinion.
Justice Sterba specially concurred, with opinion.

**OPINION**

¶ 1     Defendant Nicholas Morfin appeals from an order of the circuit court dismissing his second or successive petition for relief from judgment (735 ILCS 5/2-1401 (West 2010)) challenging his mandatory sentence of natural life imprisonment for two counts of first degree murder on the basis that he was a minor at the time of his offenses. Defendant contends that a mandatory life sentence for an offender under 18 years old violates the Illinois constitutional requirement of proportionate penalties and the federal constitutional prohibition against cruel and unusual punishments. In particular, he contends that his claim is meritorious under the United States Supreme Court decision in *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012). The State responds that defendant's constitutional challenges to his sentence are barred as *res judicata* and are not meritorious, and particularly contends that *Miller* does not apply herein as it is a new rule of law that cannot be applied retroactively on collateral review. For the reasons stated below, we agree with defendant, vacate his sentence, and remand for resentencing consistent with *Miller*.

¶ 2                                    BACKGROUND
¶ 3                         Pretrial and Trial Proceedings
¶ 4     Defendant–along with codefendants William Bigeck, Eric Anderson, Nicholas Liberto, and Edward Morfin (Edward)–was charged with first degree murder in the shooting deaths of Carrie Hovel and Helena Martin, and three counts each of attempted first degree murder and aggravated discharge of a firearm for allegedly shooting at Bryan Adasiak, Peter Casanas, and Melissa Shibla, all allegedly done on or about December 14, 1995.

¶ 5     Defendant was tried in 1997 in a severed jury trial upon the first degree murder charges alone. Bigeck and Edward, eligible for the death penalty as each was over 18 years old at the time of the offenses, had each pled guilty to one count of first degree murder, with the other charges dismissed and a 30-year prison sentence recommended by the State, in exchange for

testimony against their codefendants.

¶ 6     According to the trial evidence, codefendants Anderson and Bigeck stole two revolvers from a police officer's home on the morning in question and brought them to defendant's home. There, defendant and Anderson test-fired the guns in the basement, then defendant hid one of the guns, wrapped in a rubber glove, in the cushions of his bedroom sofa. Defendant, Anderson, and Bigeck were all members of the Almighty Popes street gang, and they met after the gun theft with leaders of that gang, who ordered them to attack members of the rival Ridgeway Lords gang found in Almighty Popes' territory. Anderson was to actually do the shooting, while defendant was to wipe off fingerprints and file off serial numbers from the stolen guns; he did so. That afternoon, defendant was riding in an older gray or silver sedan with codefendants Liberto, Edward, and Anderson when defendant saw in Almighty Popes territory a tan van that the gang associated with the Ridgeway Lords; defendant said that they should "pull a burn on the van"; that is, shoot up the van. The gray sedan passed the van two or three times, then drove away. At about 6 p.m., Edward, Anderson, and Bigeck walked to the parked van, occupied by teenagers Hovel, Martin, Adasiak, Casanas, and Shibla. Adasiak was a member of the Ridgeway Lords. As Casanas started to drive away upon seeing the young men approaching, Anderson fired several shots at the van and Hovel and Martin were fatally shot. While defendant was supposed to provide a ride to Anderson and the others to and from the shooting, they walked to the shooting and there was no car waiting for them afterwards.

¶ 7     In lineups, Adasiak and Casanas identified Anderson and Bigeck as two of the young men from the shooting. After the shooting, Liberto was seen parking and exiting an older gray car that was identified by Casanas as the one that passed the van before the shooting. Edward and Bigeck testified to their participation in the aforementioned events. Other members of the Almighty Popes testified that defendant, Anderson, and Bigeck were members of that gang, that the Almighty Popes associated the tan van with the Ridgeway Lords, that defendant, Anderson, and Bigeck were ordered to attack the Ridgeway Lords, and that Anderson and Bigeck admitted to stealing two guns that were then test-fired in defendant's basement and from which defendant filed serial numbers. A police officer testified that two revolvers were stolen from her home on the day in question, and she identified Bigeck as one of the two suspicious men she had seen outside her home just before leaving it. Defendant led officers to his home, where they found one of the stolen pistols wrapped in a latex glove in the cushions of a sofa in his bedroom as well as bullet fragments from a dresser in the bedroom and more bullet fragments and pock-marked walls in the basement. Edward brought the police to where the other stolen gun was hidden, and forensic testing found that this latter gun fired the bullets and fragments taken from Hovel and Martin and from defendant's bedroom. A police gang-crimes detective explained that certain of defendant's tattoos, and gestures by defendant and Anderson in three photographs depicting them together, indicated membership in the Almighty Popes. The detective also explained that a phrase in a postarrest letter from defendant–"Folk killing for a living"–indicated "his lifestyle as a Folks killer," with the Ridgeway Lords being in the Folks affiliation of gangs.

¶ 8     The jury found defendant guilty of the first degree murders of Hovel and Martin. Posttrial motions were denied.

¶ 9                                    Sentencing Proceedings

¶ 10        Defendant's presentence investigation report (PSI) showed no prior criminal convictions
or juvenile adjudications. It indicated that he was raised by his employed and married parents
with the assistance of his grandparents, that he completed grade school and had attended over
three years of high school when he was arrested for the instant offenses, and that he was in
good physical and mental health with limited alcohol and marijuana usage. Defendant
admitted to former membership in the Almighty Popes gang, which ended in mid-1996, and
that many codefendants were also members of that gang. The PSI, and other documents in
the record, states defendant's date of birth as June 12, 1978.

¶ 11        Defendant filed a motion seeking to be sentenced to a term of years in prison on the basis
that the statutorily mandated natural life sentence for committing two or more murders would
violate his constitutional rights to due process and equal protection, to meaningful assistance
of counsel, to have his rehabilitative potential considered in sentencing, and to be free from
cruel and unusual punishment. Defendant admitted that the statute had been previously
upheld against constitutional challenge but argued that his particular circumstances called
for a different result. He noted that he was 17 years old at the time of the offenses with no
prior convictions or juvenile adjudications, and that he was found guilty on an accountability
basis. By contrast, he argued, codefendants Bigeck and Edward were adults at the time of the
offense who were armed at the scene of the crime, confessed to their participation therein,
and had a prior conviction (Edward) or admitted prior offenses (Bigeck). Nonetheless, the
State agreed to dismiss one murder count each against Edward and Bigeck and seek prison
terms of 30 years for each. Defendant argued that "it would be fundamentally unfair" as well
as cruel and unusual to sentence him to natural life imprisonment under such circumstances.
As to meaningful assistance of counsel, defendant argued that the mandatory nature of the
life sentence rendered meaningless any mitigation that his counsel would present at
sentencing.

¶ 12        On May 22, 1998, the court denied the motion and held the sentencing hearing. The State
introduced victim impact statements from Martin's mother and Hovel's father, mother,
stepfather, and grandmother, while the defense introduced 20 letters on defendant's behalf.
Defendant chose not to personally address the court. The court then sentenced defendant to
two concurrent terms of natural life imprisonment. Defendant timely filed a motion to reduce
his sentence, making the same arguments as in his presentencing motion to be sentenced to
a term of years in prison. The motion was denied.


¶ 13                          Direct Appeal and First Vacatur Petition

¶ 14        On direct appeal, defendant contended that (1) he was arrested without probable cause,
(2) the trial court allowed improper gang evidence against him, (3) the court also improperly
admitted "other-crimes" evidence regarding his prior interactions with police, (4) the State
made multiple improper arguments, and (5) the State failed to disclose potentially
exculpatory evidence regarding a State witness. Defendant also contended that his mandatory
sentence of natural life imprisonment was unconstitutional. This court affirmed defendant's
convictions and sentence, noting in relevant part that the mandatory life sentence provision

had been upheld (1) on the basis that no possible mitigating evidence can overcome the statute, and (2) against challenges from youthful offenders and from defendants convicted on an accountability basis. *People v. Anderson*, Nos. 1-98-2390, 1-98-2438 cons. (2000) (unpublished order under Supreme Court Rule 23).[1]

¶ 15 In 2005, defendant, through counsel, filed a petition to vacate his sentence as void, arguing that the statute mandating natural life imprisonment for two or more murders was unconstitutional on its face and as applied to him. He cited *People v. Miller*, 202 Ill. 2d 328 (2002), where our supreme court held the statute unconstitutional under the Illinois proportionate-penalties clause as applied to a 15-year-old convicted on an accountability basis and affirmed the trial court's sentence of 50 years' imprisonment. Defendant acknowledged that he, unlike Miller, was over 17 years old but argued that this should not bar him from the same relief as Miller. Defendant also argued that the statute and his sentence thereunder violate the federal prohibition on cruel and unusual punishments because they make no distinction between juvenile and adult offenders, citing *Roper v. Simmons*, 543 U.S. 551 (2005), where the United States Supreme Court found unconstitutional the imposition of the death penalty on persons under 18 years old at the time of their offenses.

¶ 16 The State moved to dismiss the petition, noting that *Miller* held the statute at issue unconstitutional as applied to Miller in particular while expressly declaring that a natural life sentence against a juvenile convicted through accountability could be constitutionally appropriate under different circumstances. The State argued that defendant was not a juvenile at the time of his offense as he was 17 years old and that his culpability for the instant offenses was greater than Miller's culpability. Also, the State argued that the constitutionality of defendant's sentence was *res judicata* as it was raised and ruled upon in the direct appeal.

¶ 17 In March 2006, the circuit court granted the State's motion to dismiss, finding that the constitutionality issue was barred as *res judicata*, that *Miller* did not categorically prohibit natural life sentences for juveniles convicted of two or more murders through accountability, and that defendant was more culpable than Miller so that *Miller* does not apply here.

¶ 18 On appeal, this court affirmed the dismissal, holding that the constitutionality of defendant's sentence was *res judicata* and rejecting his argument that *res judicata* did not bar his claim based on new law; specifically, *Miller*. This court found that (1) *Miller* applies only to juveniles, while defendant as a 17-year-old was not a juvenile, and (2) *Roper* concerned the constitutionality of the death penalty for minors and does not require the same result for natural life sentences for minors. *People v. Morfin*, No. 1-06-0945 (2007) (unpublished order under Supreme Court Rule 23).

¶ 19 Instant Proceedings Under Section 2-1401(f)

¶ 20 Defendant filed the instant *pro se* petition for relief from a void judgment in July 2010,

---

[1]Codefendant Anderson, convicted of two counts of first degree murder in a separate jury trial and sentenced to natural life imprisonment, raised many of the same contentions as defendant in the consolidated appeal, including the constitutional challenges to the mandatory life sentence provision. His convictions and sentence were also affirmed.

arguing that the court had no authority to extend his sentence to natural life imprisonment because (1) it had no authority to find him guilty of more than one murder as there was no evidence of his intent to kill more than one person, and (2) his conviction was on an accountability basis. He asserted that the claims in the instant petition had not been raised on direct appeal or an earlier collateral petition.

¶ 21    On August 18, 2010, the circuit court dismissed the petition, finding that defendant was not presenting any new evidence, that defendant's intent to kill need not be proven to properly convict him of first degree murder, and that such a claim was forfeited because it could have been raised earlier. Defendant filed a *pro se* motion for reconsideration, which the court denied on October 7, 2010. This appeal followed.

¶ 22                    ARGUMENTS OF THE PARTIES

¶ 23    Defendant contends that the statute mandating natural life imprisonment for any person who murders more than one person is unconstitutional as applied to a minor, under the Illinois constitutional requirement of proportionate penalties and the federal constitutional prohibition against cruel and unusual punishments. Fundamentally, he argues that the mandatory nature of the sentence precludes consideration of a defendant's rehabilitative capacity, which is of particular importance for minors as the law recognizes their reduced capacity and responsibility. Defendant contended that "he was minimally involved in the commission of the offense."

¶ 24    The State responds that defendant's constitutional challenge should be barred as *res judicata*. The State also contends that *People v. Miller* does not apply to defendant's case because (1) though a minor at the time of his offenses, he was not a juvenile; that is, not under 17 years old, and (2) his involvement in the planning and preparation of the instant offenses was well beyond Miller's nearly passive role in his offenses. The State argued that nothing in federal or Illinois case law since *Miller* had categorically barred natural life imprisonment for minors convicted of homicide, and indeed Illinois courts recently rejected such contentions.

¶ 25    Since defendant's initial brief, the United States Supreme Court handed down *Miller v. Alabama*, which defendant first cites–and relies upon heavily–in his reply brief. The *Miller v. Alabama* Court held that the federal constitution's ban on cruel and unusual punishments forbids a mandatory sentence of life imprisonment without possibility of parole upon offenders who were minors at the time of their offense. Defendant contends that *Miller v. Alabama* squarely governs here and renders his mandatory life sentence void *ab initio* so that there is no *res judicata* effect from this court's earlier orders. He also argues that "Illinois courts have rejected similar *res judicata* arguments in post-conviction petition appeals where new law has been established after the pendency of a defendant's direct appeal."

¶ 26    The State has responded in a supplemental brief, arguing that *Miller v. Alabama* is not applicable here because it constitutes a new rule of procedural law and thus cannot be applied to cases on collateral review such as the instant case. The State argues that *Miller* is new law because it imposes a new obligation or restriction on the federal and state governments. The State also argues that *Miller* does not fall under either of the exceptions to the

nonretroactivity rule. (1) It does not prohibit the State from imposing natural life imprisonment on minors but only from doing so mandatorily; that is, without discretion to impose a lesser sentence. (2) It does not require a procedure implicit in the concept of ordered liberty; that is, it does not recognize a previously unrecognized bedrock procedural rule essential to the fairness of the proceedings. The State noted that this court has held that *People v. Miller* is inapplicable retroactively on collateral review because it did not create or impose a categorical ban on natural life sentences for juveniles convicted on an accountability basis.

¶ 27      In his supplemental brief, defendant contends that *Miller v. Alabama* created a new rule of substantive law–as opposed to procedural law–applicable retroactively on collateral review. Moreover, defendant argues, *Miller* falls under the second exception to nonretroactivity because a lack of discretion whether to impose a natural life sentence "creates an unacceptably high risk that the sentence will be disproportionate." Defendant argues that, in a companion collateral-review case to *Miller v. Alabama*, the Supreme Court applied *Miller* and thus indicated its intent that *Miller* be applied retroactively. Defendant also argues that a sentence that is void *ab initio* must be vacated. As to *People v. Miller* being nonretroactive, defendant argues that it does not categorically ban natural life imprisonment for juveniles convicted on an accountability basis while *Miller v. Alabama* categorically bans mandatory natural life imprisonment of minors. Lastly, defendant argues that this court should not apply a retroactivity analysis at all because our supreme court erroneously followed the United States Supreme Court's *Teague* retroactivity test though the Supreme Court has ruled that it is not binding upon the states. *Teague v. Lane*, 489 U.S. 288 (1989).


¶ 28                                    ANALYSIS
¶ 29                          General Governing Principles
¶ 30      Section 2-1401 of the Code of Civil Procedure governs "[r]elief from final orders and judgments, after 30 days from the entry thereof," and paragraph (f) provides that "[n]othing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief." 735 ILCS 5/2-1401(a), (f) (West 2010). A petition challenging a judgment as void is not subject to the limitations period or due diligence requirements of section 2-1401, and this court reviews *de novo* the disposition of a section 2-1401 petition other than after an evidentiary hearing. *Parker v. Murdock*, 2011 IL App (1st) 101645, ¶¶ 18, 20. However, claims that were raised and decided on direct appeal are barred as *res judicata* and claims that could have been raised, but were not, are deemed forfeited. *People v. Sanders*, 238 Ill. 2d 391, 398 (2010).

¶ 31      The federal constitution prohibits "cruel and unusual punishments," while the Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." U.S. Const., amend. VIII; Ill. Const. 1970, art. I, § 11. That which is unconstitutional is not necessarily void, because voidness arises from a court's lack of authority to issue the judgment in question. *People v. Moran*, 2012 IL App (1st) 111165, ¶¶ 16-18, 24. A statute that is unconstitutional on its face–that is, where no set of

circumstances exists under which it would be valid–is void *ab initio*, while a statute that is merely unconstitutional as applied is not. *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20; *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶¶ 25-27.

¶ 32                                    The Statute at Issue

¶ 33     At all relevant times, the Unified Code of Corrections provided regarding first degree murder that:

"the court shall sentence the defendant to a term of natural life imprisonment when the death penalty is not imposed if the defendant

*** is a person who, at the time of the commission of the murder, had attained the age of 17 or more and is found guilty of murdering an individual under 12 years of age; or, irrespective of the defendant's age at the time of the commission of the offense, is found guilty of murdering more than one victim[.]" 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2010).

¶ 34     In *People v. Miller*, 202 Ill. 2d 328 (2002), our supreme court held that this statute violated the Illinois proportionate penalties clause as applied to its defendant, "a 15-year-old with one minute to contemplate his decision to participate in the incident and stood as a lookout during the shooting, but never handled a gun." *Miller*, 202 Ill. 2d at 341. The court therefore held that the statute in question "as applied to defendant, a juvenile offender convicted under a theory of accountability, violates the proportionate penalties clause" and affirmed the trial court's decision to impose a 50-year prison sentence. *Id.* at 343. However, the court refused to hold:

"that a sentence of life imprisonment for a juvenile offender convicted under a theory of accountability is never appropriate. It is certainly possible to contemplate a situation where a juvenile offender actively participated in the planning of a crime resulting in the death of two or more individuals, such that a sentence of natural life imprisonment without the possibility of parole is appropriate." *Id.* at 341.

¶ 35                                    *Miller v. Alabama*

¶ 36     In *Miller v. Alabama*, issued June 25, 2012, the United States Supreme Court was faced with appeals by "two 14-year-old offenders *** convicted of murder and sentenced to life imprisonment without the possibility of parole. In neither case did the sentencing authority have any discretion to impose a different punishment." *Miller*, 567 U.S. at ___, 132 S. Ct. at 2460. While Evan Miller was granted *certiorari* from a direct appeal, the other defendant, Kuntrell Jackson, was before the Supreme Court on review of the dismissal of a state *habeas* petition. *Id.* at ___, 132 S. Ct. at 2461-63.

¶ 37     The Supreme Court noted its earlier decisions in *Roper* and *Graham v. Florida*, 560 U.S. ___, 130 S. Ct. 2011 (2010), declaring unconstitutional the sentencing of a minor–a person under 18 years old at the time of the offense–to either the death penalty or life imprisonment without parole for a nonhomicide offense. The Supreme Court also noted that it had held unconstitutional the mandatory imposition of a capital sentence, so that the characteristics

of a defendant and the details of his offense must be considered before sentencing him to death. The Court found that "*Graham* and *Roper* and our individualized sentencing cases alike teach that in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult" because the mandatory nature of the sentence "precludes consideration of [the offender's] chronological age and its hallmark features–among them, immaturity, impetuosity, and failure to appreciate risks and consequences." *Id.* at ___, 130 S. Ct. at 2468. Based on these precedents, the Court held:

> "[A] judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment." *Id.* at ___, 130 S. Ct. at 2475.

¶ 38 The Court refused to declare categorically that a minor cannot receive life imprisonment without parole for a homicide offense, and it expressly distinguished earlier decisions where mandatory natural life imprisonment of adults was upheld. *Id.* at ___, 130 S. Ct. at 2469-70 (citing *Harmelin v. Michigan*, 501 U.S. 957 (1991) (upholding mandatory sentence of life without parole for possession of more than 650 grams of cocaine)). However, "given all we have said in *Roper*, *Graham*, and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Id.* at ___, 130 S. Ct. at 2469.

¶ 39 Voidness

¶ 40 As a threshold matter, we find that *Miller v. Alabama* does not render the statute in question or defendant's sentence thereunder void *ab initio*. *Miller* does not affect the validity of the natural life imprisonment statute as to nonminor defendants, so that the statute is not unconstitutional on its face. Moreover, *Miller* does not deprive or divest any state or court of the authority to sentence a defendant who was a minor at the time of his offense, such as defendant, to natural life imprisonment for the commission of a homicide.

¶ 41 Applicability of Constitutional Cases on Collateral Review

¶ 42 Because the State has a legitimate interest in the finality of criminal convictions, new constitutional rules of criminal procedure are generally not to be applied retroactively to cases on collateral review. *Sanders*, 238 Ill. 2d at 401; *People v. Morris*, 236 Ill. 2d 345, 359 (2010). A case announces such a new rule when it breaks new ground or imposes a new obligation on the states or federal government, so that the result of the case "must not be '*dictated* by precedent existing at the time the defendant's conviction became final.' " (Emphasis in original.) *Sanders*, 238 Ill. 2d at 400-01 (quoting *Teague v. Lane*, 489 U.S. 288, 301 (1989)). Because it is often difficult to determine whether a case announces a new rule, especially where the new decision was reached by extending the reasoning of prior cases, the fact that a court asserts that its decision is controlled by, follows the logic of, conforms with,

or is consistent with a prior decision is not conclusive or dispositive of whether the case actually announces a new rule. *Id.* at 401-02. Instead, the task is to determine whether courts considering the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule was constitutionally required. *Id.* at 402.

¶ 43   There are two exceptions whereby a new constitutional rule may apply retroactively: if the rule (1) "places certain kinds of primary, private individual conduct beyond the power of the criminal-law-making authority to proscribe" or (2) "requires the observance of those procedures that are implicit in the concept of ordered liberty." *Id.* at 401. The first exception, regarding new substantive rules as contrasted to new procedural rules, includes not only constitutional decisions that particular conduct or persons are beyond the State's power to punish, but also a decision that a defendant faces a punishment that the law cannot impose upon him; that is, a ruling limiting the conduct that constitutionally may be subject to a certain penalty. *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004); *Lucien v. Briley*, 213 Ill. 2d 340, 348 (2004).

¶ 44   Only " 'watershed rules of criminal procedure' " creating new procedures "without which the likelihood of an accurate conviction is seriously diminished" fall under the second exception. *Sanders*, 238 Ill. 2d at 401 (quoting *Teague*, 489 U.S. at 311, 313). Our supreme court has held that, because "*Teague* makes clear that the focus of the inquiry when considering whether the second exception applies is the accuracy of the conviction and finding of guilt," a constitutional violation regarding sentencing "has nothing to do with accuracy of the conviction." *Morris*, 236 Ill. 2d at 362-63. Thus, "a rule that only affects the enhancement of a defendant's sentence does not amount to an error which seriously affects the fairness, integrity or public reputation of judicial proceedings so as to fall within the second *Teague* exception requiring retroactivity in all cases." *Id.* at 363.

¶ 45   In support of his argument that we should not conduct a *Teague* retroactivity analysis, defendant notes that the Supreme Court held in *Danforth v. Minnesota*, 552 U.S. 264 (2008), that the states need not follow *Teague*; that is, it does not "constrain[ ] the authority of state courts to give broader effect to new rules of criminal procedure than is required by that opinion." *Danforth*, 552 U.S. at 266. However, as may be seen above, our supreme court has applied the *Teague* test since *Danforth*. Moreover, this court in *People v. Davis*, 388 Ill. App. 3d 869 (2009), applied *Teague* despite a *Danforth*-based challenge, noting that our supreme court has never held that it was required to follow *Teague* and that this court has no authority to disregard or set aside decisions of our supreme court.

¶ 46                          Retroactivity of *People v. Miller*

¶ 47   *People v. Miller* has been considered time and again by our courts, and in particular the issue of its applicability on collateral review was addressed in *Davis*. There, a defendant who was a juvenile at the time of his offenses was tried in the criminal court and convicted (in relevant part) of two first degree murders and sentenced to natural life imprisonment. His direct appeal was decided in 1995 with leave to appeal denied in 1996, and this court affirmed the dismissal of two postconviction petitions before his section 2-1401(f) petition

relying upon *People v. Miller*. *Davis*, 388 Ill. App. 3d at 871, 874-76. The *Davis* defendant contended that *People v. Miller* announced a new substantive rule that should be applied retroactively under the first prong of the *Teague* rule. However, this court held that *Miller* did not create a new substantive rule prohibiting the imposition of a natural life sentence either for all juveniles or for all juveniles convicted on an accountability basis, but instead held that a natural life sentence was unconstitutionally disproportionate as applied to the *Miller* defendant. *Id.* at 879-82. This court therefore did not apply *Miller* to defendant's sentence challenge. *Id.* at 882.

¶ 48                              Retroactivity of *Miller v. Alabama*

¶ 49       The Second Division of this court recently addressed the retroactivity of *Miller* on collateral review. *People v. Williams*, 2012 IL App (1st) 111145. The *Williams* defendant was, in relevant part, convicted of two counts of first degree murder and sentenced to natural life imprisonment, a judgment affirmed on direct appeal in 1999. *People v. Williams*, 305 Ill. App. 3d 517 (1999). He sought leave to file his fourth postconviction petition in 2011, relying upon *Graham*, and on appeal from the denial of leave he cited *Miller*. The *Williams* court found that *Miller* does not render the mandatory life imprisonment statute void or unconstitutional on its face as it does not affect the statute's application to adult perpetrators. However, the *Williams* court also found that *Miller* states a watershed rule of criminal procedure rendering it retroactive under *Teague*. The case was therefore remanded for, in relevant part, a new sentencing hearing.

¶ 50       From the published federal and state cases citing *Miller v. Alabama*, most of which address *Miller* on direct appeal, two other states–Florida and Michigan–have directly addressed the retroactivity of *Miller* on collateral review.

¶ 51       In *Geter v. State*, No. 3D12-1736, 2012 WL 4448860 (Fla. Ct. App. 3d Dist. Sept. 27, 2012), a 17-year-old offender convicted of first degree murder and sentenced to life imprisonment in 2003, with his conviction affirmed on direct appeal in 2004 and with three postconviction petitions denied in 2005, 2009, and 2012, filed a fourth post-conviction petition challenging his sentence pursuant to *Miller*. Similar to Illinois law, Florida provides that a change of case law will not be applied on postconviction review " 'in the absence of fundamental and constitutional law changes which cast serious doubt on the veracity or integrity of the original trial proceeding.' " *Geter*, 2012 WL 44488602, at *2 (quoting *Witt v. State*, 387 So. 2d 922, 929 (Fla. 1980)). Florida law contrasts changes that " 'place beyond the authority of the state the power to regulate certain conduct or impose certain penalties' " and " 'those changes of law which are of sufficient magnitude to necessitate retroactive application' "; that is, fundamentally revolutionary cases, with, on the other hand, merely evolutionary cases affording new or different standards for the admissibility of evidence, procedural fairness, proportionality review of capital cases, and the like. *Geter*, 2012 WL 4448860, at *2 (quoting *Witt*, 387 So. 2d at 929).

¶ 52       The *Geter* court held that *Miller* is not such a fundamental or revolutionary case that it should be applied retroactively. The court held that *Miller* does not affect the determination of guilt or innocence and does not cast doubt on the integrity of the original trial proceeding.

The court noted that *Miller* does not forbid a sentence of life imprisonment without parole for minors but merely requires consideration of youth-related mitigating factors, in contrast to *Graham*, which categorically prohibited natural life imprisonment of minors for nonhomicide offenses. The *Geter* court acknowledged that another panel of the Florida appellate court had followed *Graham* to remand for resentencing in a collateral-review case (*Kleppinger v. State*, 81 So. 3d 547 (Fla. Ct. App. 2012)) but distinguished that decision from the case before it because *Graham* imposed a substantive prohibition of life-without-parole upon minors for nonhomicide offenses while *Miller* mandated a procedure for imposing such a sentence and expressly allowed for the possibility of such a sentence for a minor convicted of homicide. See also *Gonzalez v. State*, No. 1D12-3153, 2012 WL 5233454 (Fla. Ct. App. 1st Dist. Oct. 24, 2012) (following *Geter*).

¶ 53    The Michigan Court of Appeals has decided that, under a *Teague* analysis, *Miller* does not apply retroactively. *People v. Carp*, No. 307758, 2012 WL 5846553 (Mich. App. Nov. 15, 2012). The *Carp* court found that *Miller* states a new rule, because its result was not dictated by existing precedent, and that *Miller* does not fall under one of the two exceptions rendering a new rule retroactive. The *Carp* court found that the *Miller* rule is procedural rather than substantive because it does not prohibit sentences of natural life without parole for minors. The *Carp* court also found that *Miller* does not create a watershed rule of criminal procedure as the *Miller* rule is neither necessary to prevent an impermissibly large risk of an inaccurate conviction nor does it alter one's understanding of the bedrock procedural elements essential to the fairness of criminal proceedings.

¶ 54    The Iowa Court of Appeals has granted remands for resentencing based on *Miller* in two cases of first degree murder committed by 17-year-olds and punished by life imprisonment without parole where the direct appeal process was exhausted in 1987 and 2000, respectively. *State v. Lockheart*, No. 10-1815, 2012 WL 2814378 (Iowa Ct. App. July 11, 2012); *State v. Bennett*, No. 11-0061, 2012 WL 2816806 (Iowa Ct. App. July 11, 2012). However, in both cases the defendant filed a motion for correction of an illegal sentence, which Iowa law allows to be filed at any time; the Iowa Supreme Court has ruled that such motions encompass claims of cruel and unusual punishment. *Veal v. State*, 779 N.W.2d 63 (Iowa 2010). Therefore, the retroactivity of *Miller* was, and presumably is, not an issue under Iowa law. Similarly, the Louisiana Supreme Court has granted a remand for resentencing based on *Miller* from a 2011 motion to correct an illegal sentence imposed in 1995. *State v. Simmons*, 2012-1810 (La. 10/12/12); 99 So. 3d 28.

¶ 55                                   CONCLUSION

¶ 56    We conclude that, pursuant to *Teague*, *Miller v. Alabama* is applicable retroactively on collateral review. *Miller* creates a new rule of law that was not required by either the precedents on what penalties a minor constitutionally cannot receive (*Roper* and *Graham*) or by the cases cited in *Miller* requiring sentencing discretion for the death penalty. See, *e.g.*, *Loggins v. Thomas*, 654 F.3d 1204, 1222 (11th Cir. 2011) ("the Supreme Court did not imply in *Roper* or in *Graham* that a life without parole sentence is impermissible for a juvenile who commits a homicide"). However, we find that *Miller* constitutes a new substantive rule.

While it does not forbid a sentence of life imprisonment without parole for a minor, it does require Illinois courts to hold a sentencing hearing for every minor convicted of first degree murder at which a sentence other than natural life imprisonment must be available for consideration. *Miller* mandates a sentencing range broader than that provided by statute for minors convicted of first degree murder who could otherwise receive only natural life imprisonment. We therefore respectfully disagree with the Florida courts in *Geter* and *Gonzalez* and the Michigan court in *Carp*.

¶ 57       Our decision is reinforced by the fact that one of the two *Miller* defendants was before the United States Supreme Court on collateral review following completion of his direct appeal and received relief in the same manner as Miller himself. While this court independently conducts a *Teague* analysis pursuant to Illinois law, the relief granted to Jackson in *Miller* tends to indicate that *Miller* should apply retroactively on collateral review.

¶ 58       We acknowledge that this court held in *Davis* that *People v. Miller* is not retroactive because it does not prohibit a sentence of natural life imprisonment for minors. However, we consider *Davis* inapposite because *People v. Miller* is distinguishable in a key manner from *Miller v. Alabama*. Relief pursuant to *People v. Miller* is a matter of the trial court's discretion, so that a defendant shall be sentenced pursuant to the statute to natural life imprisonment unless he makes a case that such a sentence would be cruel and unusual as applied to him under his particular circumstances. By contrast, *Miller v. Alabama* requires in every case with a minor defendant, by right and as a matter of course, a full sentencing hearing with a range of sentences available to the court. In other words, arguments in mitigation face an uphill battle under *People v. Miller* but are on a level playing field pursuant to *Miller v. Alabama*. The substantive change effected by *Miller v. Alabama* is sufficiently categorical (to use defendant's word) to distinguish it from *People v. Miller* for purposes of our retroactivity analysis.

¶ 59       Pursuant to *Miller v. Alabama*, defendant is entitled to a new sentencing hearing where natural life imprisonment is not the only available sentence. Under our statutes now and at the time of defendant's offenses, the circuit court may sentence a defendant convicted of first degree murder committed as a minor to a prison term of 20 to 60 years, up to 100 years where an appropriate extended-term finding has been made, or to natural life imprisonment. 720 ILCS 5/9-1(b) (West 2010); 730 ILCS 5/5-4.5-20(a) (West 2010).

¶ 60       Accordingly, we reverse the order of the circuit court denying vacatur of defendant's sentence, vacate said sentence, and remand for a sentencing hearing consistent with this decision.

¶ 61       Vacated and remanded with directions.

¶ 62       JUSTICE STERBA, specially concurring.

¶ 63       Although I concur in the result, I write separately because I do not believe a *Teague* analysis is necessary. The *Teague* Court addressed the issue of the retroactivity of a new constitutional rule of criminal procedure. *Teague*, 489 U.S. at 299. The Court formally adopted the rule that new rules of criminal procedure do not generally apply retroactively to

cases on collateral review, and can only be applied retroactively if they meet one of two exceptions. *Id.* at 305-06, 310. Although the first exception appears to describe a new substantive rule as opposed to a procedural rule, the *Teague* Court did not specifically address the retroactivity of new substantive rules or the distinction between the two types of rules.

¶ 64    In *Schriro*, the Court noted the distinction between new substantive rules and new procedural rules, and explicitly stated that substantive rules generally apply retroactively on collateral review. *Schriro*, 542 U.S. at 351. The Court explained that because such rules "necessarily carry a significant risk that a defendant *** faces a punishment that the law cannot impose upon him," they should be retroactively applied. (Internal quotation marks omitted.) *Id.* at 352. The Court further observed that, while it has sometimes referred to rules of this type as falling under one of the exceptions to *Teague's* bar on retroactivity, "they are more accurately characterized as substantive rules *not subject to the bar*." (Emphasis added.) *Id*. at n.4.

¶ 65    As the majority notes, the states of Florida and Michigan have considered the retroactivity of *Miller* on collateral review. *Supra* ¶¶ 50-53 (citing *Geter v. State*, No. 3D12-1736, 2012 WL 4448860 (Fla. Ct. App. Sept. 27, 2012), and *People v. Carp*, No. 307758, 2012 WL 5846553 (Mich. App. Nov. 15, 2012)). In declining to apply *Miller* retroactively, the *Geter* and *Carp* courts both concluded that *Miller* announced a new procedural rule because the Court did not forbid a sentence of life imprisonment for juveniles. *Supra* ¶¶ 52-53. However, neither court appears to have fully appreciated the distinction that the *Miller* rule forbids a *mandatory* sentence of life imprisonment for juveniles. See *supra* ¶ 37 (quoting *Miller*, 567 U.S. at ___, 132 S. Ct. at 2475). I also recognize that another division of this court very recently addressed the retroactivity of *Miller* on collateral review. *Supra* ¶ 49 (citing *Williams*, 2012 IL App (1st) 111145). The *Williams* court determined that *Miller* "not only changed procedures, but also made a substantial change in the law." *Williams*, 2012 IL App (1st) 111145, ¶ 51. The *Williams* court then held that *Miller* announced a "watershed rule[ ] of criminal procedure." (Internal quotation marks omitted.) *Id*. (quoting *People v. Sanders*, 238 Ill. 2d 391, 401 (2010)). Because of the distinction made by the *Schriro* Court between substantive and procedural rules as noted above, I do not believe the *Williams* court needed to reach the issue of whether the *Miller* rule constituted a watershed rule of criminal procedure.

¶ 66    In agreeing with the majority that the new rule announced in *Miller* is substantive rather than procedural (*supra* ¶ 56), I find *Sumner v. Shuman*, 483 U.S. 66 (1987), instructive. Decided prior to *Teague*, the *Sumner* decision does not make a distinction between substantive and procedural rules. However, the *Sumner* Court determined that a statute that mandated the imposition of the death penalty on a life-term inmate who has been convicted of murder was unconstitutional. *Id.* at 77-78. The Court noted that the statute impermissibly created the risk that the death penalty would be imposed in spite of the fact that mitigating factors potentially exist that would call for a less severe penalty. *Id.* at 82. The defendant in *Sumner* to whom the new rule was applied was before the court on collateral review. *Id.* at 68. Although not characterized by the *Sumner* Court as such, the clear implication of the *Sumner* decision is that a new rule that does not prohibit a certain sentence in every case but

prohibits the mandatory imposition of that sentence is a substantive rule rather than a procedural rule. Moreover, because the Supreme Court has likened a sentence of life without the possibility of parole to the death penalty (see *Graham*, 560 U.S. at ___, 130 S. Ct. at 2027), the *Sumner* rule is analogous to the rule announced in *Miller*.

¶ 67     The *Teague* Court observed that whether a new rule should be given prospective or retroactive effect should be addressed at the time of the decision announcing the new rule. *Teague*, 489 U.S. at 300. The Court further noted that "once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." *Id.* In applying the new rule to Jackson, a defendant whose case was before the Court on collateral review, the *Miller* Court made it clear that the new rule was to be applied retroactively on collateral review.

¶ 68     Because the *Miller* Court applied the rule to both defendants before the Court, including the defendant whose case was before it on collateral review (*supra* ¶ 57), it is clear that justice requires that the *Miller* rule be applied to defendant in the case *sub judice*. Moreover, as previously noted, I agree with the majority's conclusion that the new rule announced in *Miller* is a substantive rule (*supra* ¶ 56). Therefore, in light of the *Schriro* Court's statement that substantive rules are not subject to the *Teague* bar and the *Miller* Court's application of the new rule to a defendant whose case was before it on collateral review, I concur in the result but would hold that a *Teague* analysis is not needed.