NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Original
No. 2013-566


PETITION OF STATE OF NEW HAMPSHIRE


Argued:  June 18, 2014
Opinion Issued:  August 29, 2014


        Christopher M. Johnson, chief appellate defender, of Concord, on the joint brief and orally, for respondents Robert Dingman and Eduardo Lopez, Jr.


        Lothstein Guerriero, of Keene (Richard Guerriero on the joint brief), and Christopher M. Johnson, chief appellate defender, of Concord, orally, for respondent Robert Tulloch.


        Getman, Schulthess & Steere, of Manchester (Andrew Schulman and Clara Lyons on the joint brief), and Christopher M. Johnson, chief appellate defender, of Concord, orally, for respondent Michael Soto.


        Joseph A. Foster, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the brief and orally), for the State.

Juvenile Law Center, of Philadelphia, Pennsylvania (Marsha L. Levick on the brief), and Cohen & Winters, PLLC, of Concord (Andrew S. Winters on the brief), for the Juvenile Law Center, as amicus curiae.

New Hampshire Civil Liberties Union, of Concord (Gilles R. Bissonnette on the brief), New Hampshire Legal Assistance, of Portsmouth (Michelle Wangerin on the brief), Disabilities Rights Center, Inc., of Concord (Amy B. Messer and Aaron Ginsberg on the brief), and New Hampshire Association of Criminal Defense Lawyers, of Manchester (Katherine Cooper on the brief), for The New Hampshire Civil Liberties Union, New Hampshire Legal Assistance, Disabilities Rights Center, Inc., The New Hampshire Association of Criminal Defense Lawyers, Child and Family Services of New Hampshire, New Hampshire Kids Count, The National Association of Social Workers and its New Hampshire chapters, and four professors from the University of New Hampshire School of Law (in their individual capacities only), as amici curiae.

CONBOY, J. In this Rule 11 petition, see Sup. Ct. R. 11, the State appeals the determination of the Superior Court (Smukler, J.) that the rule announced in Miller v. Alabama, 132 S. Ct. 2455 (2012), precluding the imposition of mandatory life-without-the-possibility-of-parole sentences on juvenile offenders under the age of eighteen at the time of their crimes, applies retroactively to the respondents (petitioners in the trial court), Robert Dingman, Eduardo Lopez, Jr., Michael Soto, and Robert Tulloch on collateral review. We affirm.

I.   Background

The respondents were convicted of first degree murder for offenses committed when they were seventeen years old. Accordingly, they each received a statutorily-mandated sentence of life imprisonment without the possibility of parole. See RSA 630:1-a, III (2007).

On June 25, 2012, after all of the respondents' convictions had become final, the United States Supreme Court issued its decision in Miller, holding "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders." Miller, 132 S. Ct. at 2469. The Court stated that, when sentencing juvenile offenders convicted of homicide, sentencers must "take into account how children are

2

different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id.

As a result of the Supreme Court's decision, the respondents each sought post-conviction relief in the superior court, arguing that the rule announced in Miller applied retroactively and that, consistent with Miller, the Eighth and Fourteenth Amendments to the United States Constitution, and Part I, Articles 18 and 33 of the New Hampshire Constitution, they are each entitled to a new sentencing hearing. The cases were consolidated to address the threshold question of whether Miller applies retroactively. After hearing arguments, the trial court ruled that Miller applies retroactively so as to entitle each respondent to a new sentencing hearing. Thereafter, the State filed this petition for writ of certiorari challenging the trial court's ruling.

II.    Standard of Review

Certiorari is a remedy that is not granted as a matter of right, but rather at the discretion of the court. Petition of State of N.H. (State v. MacDonald), 162 N.H. 64, 66 (2011); see Sup. Ct. R. 11. Certiorari is available to review whether the trial court acted illegally with respect to jurisdiction, authority or observance of the law, or unsustainably exercised its discretion or acted arbitrarily, unreasonably, or capriciously. Id.

The sole issue for our review is whether the Supreme Court's decision in Miller applies retroactively to cases on collateral review, i.e., whether the decision applies to the respondents in this case whose direct appeals were completed before Miller was decided. Because this issue poses a question of law, we review the matter de novo. See In the Matter of Sullivan & Sullivan, 159 N.H. 251, 254 (2009).

III.    Analysis

A.    Miller v. Alabama

We begin our analysis by examining the Miller decision itself. In Miller, the Supreme Court addressed whether imposing mandatory life-without-parole sentences upon juvenile offenders violated the Eighth Amendment's prohibition against cruel and unusual punishments. Miller, 132 S. Ct. at 2460. The case involved the consolidated appeals of two fourteen-year-old offenders, each of whom was convicted of murder and sentenced to life imprisonment without the possibility of parole. Id. "In neither case did the sentencing authority have any discretion to impose a different punishment." Id. One of the offenders, Evan Miller, was granted certiorari from a direct appeal. Id. at 2462-63. However, the other offender, Kuntrell Jackson, was granted review from the dismissal of a state court petition for habeas corpus relief. Id. at 2461.

The Supreme Court found that both Miller's and Jackson's cases implicated "two strands of precedent reflecting [its] concern with proportionate punishment." Id. at 2463. "The first has adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of the penalty." Id. That line of precedent includes several cases that "specially focused on juvenile offenders, because of their lesser culpability." Id. For instance, the Court noted that in Roper v. Simmons, 543 U.S. 551 (2005), it held that the Eighth Amendment bars capital punishment of children. Id. It also noted that in Graham v. Florida, 560 U.S. 48 (2010), it held that the Eighth Amendment "prohibits a sentence of life without the possibility of parole for a child who committed a nonhomicide offense." Id.

Drawing from those cases, the Court explained that juveniles "are constitutionally different from adults for purposes of sentencing." Id. at 2464. "Roper and Graham emphasized that the distinctive attributes of youth" — such as immaturity, impetuosity, inability to appreciate risks, and vulnerability to family and home environment — "diminish the penalogical justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." Id. at 2465, 2468. The Court explained that although Graham addressed life-without-parole sentences for juveniles convicted of nonhomicide crimes, "none of what it said about children — about their distinctive (and transitory) mental traits and environmental vulnerabilities — is crime specific." Id. at 2465. "Those features are evident in the same way, and to the same degree, when . . . a botched robbery turns into a killing." Id. Thus, "Graham's reasoning implicates any life-without-parole sentence imposed on a juvenile, even as its categorical bar relates only to nonhomicide offenses. . . . Graham insists that youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole." Id. Applying this reasoning, the Court found that, "by subjecting a juvenile to the same life-without-parole sentence applicable to an adult — these laws prohibit the sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender." Id. at 2466. This, the Court concluded, contravened the foundational principle in Graham and Roper: "[I]mposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." Id.

The second strand of precedent implicated in Miller prohibits "mandatory imposition of capital punishment, requiring that sentencing authorities consider the characteristics of a defendant and the details of his offense before sentencing him to death." Id. at 2463-64. In the Court's view, Graham's treatment of life-without-parole sentences as analogous to capital punishment made relevant its line of capital punishment precedent "demanding individualized sentencing." Id. at 2467. Citing its decision in Woodson v. North Carolina, 428 U.S. 280 (1976), which "held that a statute mandating a

4

death sentence for first-degree murder violated the Eighth Amendment," the Court explained that it "thought the mandatory scheme flawed because it gave no significance to the character and record of the individual offender or the circumstances of the offense and excluded from consideration the possibility of compassionate or mitigating factors." Id. (quotations, brackets, and ellipsis omitted). The Court concluded that "the confluence of these two lines of precedent leads to the conclusion that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." Id. at 2464. Thus, the Court held that, in order to be constitutional, "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." Id. at 2475.

The states argued that mandatory life-without-parole sentences for juveniles are not unusual and, therefore, not violative of the Eighth Amendment. Id. at 2470-71. The Court explained, however, that, unlike other decisions "considering categorical bars to the death penalty and life without parole," in which it examined "society's standards, as expressed in legislative enactments and state practice," id. at 2470 (quotations omitted), the Court's decision in Miller did "not categorically bar a penalty for a class of offenders or type of crime," id. at 2471. Rather, the decision "mandates only that a sentencer follow a certain process — considering an offender's youth and attendant characteristics — before imposing a particular penalty." Id. The Court explained that, "[i]n so requiring, [its] decision flows straightforwardly from [its] precedents: specifically, the principle of Roper, Graham, and [the Court's] individualized sentencing cases that youth matters for purposes of meting out the law's most serious punishments." Id. Accordingly, the Court reversed the Miller and Jackson judgments and remanded the cases for further proceedings consistent with its holding. Id. at 2475.

### B. Retroactivity Principles

We next review the legal principles governing the retroactive application of judicial decisions on collateral review. "The determination [of] whether a constitutional decision of the United States Supreme Court is retroactive – that is, whether the decision applies to conduct or events that occurred before the date of the decision – is a matter of federal law." State v. Tallard, 149 N.H. 183, 185 (2003) (quotation and brackets omitted). "The retroactive applicability of a constitutional decision of [the Supreme Court] . . . is every bit as much of a federal question as what particular federal constitutional provisions themselves mean, what they guarantee, and whether they have been denied." Id. (quotation and brackets omitted). "In order to ensure the uniform application of decisions construing constitutional requirements and to prevent States from denying or curtailing federally protected rights, the Court has consistently required that state courts adhere to its retroactivity decision." Id. (quotation and brackets omitted).

In Teague v. Lane, 489 U.S. 288 (1989), and its progeny, the Supreme Court "laid out the framework to be used in determining whether a rule announced in one of [its] opinions should be applied retroactively to judgments in criminal cases that are already final on direct review." Whorton v. Bockting, 549 U.S. 406, 416 (2007). The Court explained that "the question whether a decision announcing a new rule should be given prospective or retroactive effect should be faced at the time of that decision." Teague, 489 U.S. at 300 (quotation and brackets omitted). "Retroactivity is properly treated as a threshold question, for, once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." Id.

"Under the Teague framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." Whorton, 549 U.S. at 416. As the Supreme Court explained in Teague, "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." Teague, 489 U.S. at 310. The Court concluded in Teague "that a new rule will not be applied retroactively to defendants on collateral review unless it falls within one of two exceptions." Penry v. Lynaugh, 492 U.S. 302, 329 (1989), abrogated on other grounds by Atkins v. Virginia, 536 U.S. 304 (2002).

Under the two exceptions, "[a] new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a 'watershed rule of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." Whorton, 549 U.S. at 416 (quotation and brackets omitted). In this case, the parties agree that Miller announced a new rule. They dispute whether the Miller rule falls within the first exception, i.e., whether the rule is substantive.

The first exception provides that a new rule will "be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," Teague, 489 U.S. at 307 (quotation omitted), or if it prohibits "a certain category of punishment for a class of defendants because of their status or offense," Penry, 492 U.S. at 330. "Such rules apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." Schriro v. Summerlin, 542 U.S. 348, 352 (2004) (quotations omitted). The Supreme Court has explained that "[a] rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." Id. at 353. With this in mind, we now turn to the question of whether the Miller rule applies retroactively to cases on collateral review, including the four cases before us.

C.    Application of Retroactivity Principles to Miller

The State argues that the <u>Miller</u> rule "addressed the process by which juvenile defendants who are convicted of first-degree murder should be sentenced" simply by adding "the requirement of a sentencing hearing." Accordingly, the State contends that the rule announced in <u>Miller</u> constitutes a new procedural rule that cannot be applied on collateral review.  The respondents disagree, contending that <u>Miller</u> announced a new substantive rule of law that applies retroactively in this case and, therefore, requires that each of them receive a new sentencing hearing.

Federal and state courts across the country "have considered whether <u>Miller</u> announced a new rule that should be applied retroactively, with varying outcomes."  <u>Malvo v. Mathena</u>, Civil Action No. 2:13–cv–375, 2014 WL 2808805, at *10 (E.D. Va. June 20, 2014); <u>see</u> <u>also</u> <u>id</u>. at *10-13 (collecting cases).  "Indeed, there is no consensus among lower courts whether <u>Miller</u> is retroactively applied to cases on collateral review."  <u>Id</u>. at *10.

> Generally, in consideration of [the <u>Miller</u> decision and federal retroactivity principles], lower courts that hold <u>Miller</u> is retroactive on collateral review find that it announced a new substantive rule, or that because the Supreme Court applied the holding to Jackson, a petitioner before the court on collateral review, the Supreme Court signaled that the rule must be applied retroactively. Alternatively, lower courts that hold <u>Miller</u> is not retroactive find that the new rule was not substantive but instead was a procedural rule that did not rise to the level of a "watershed" rule of procedure for purposes of the <u>Teague</u> analysis.

<u>Id</u>.

After thoroughly reviewing the decision in <u>Miller</u> and the jurisprudence on both sides of the matter, we agree with the reasoning of those courts finding the <u>Miller</u> rule to be "a new, substantive rule which should be applied retroactively to cases on collateral review."  <u>Jones v. State</u>, 122 So. 3d 698, 703 (Miss. 2013); <u>see</u> <u>Songster v. Beard</u>, Civil Action No. 04–5916, 2014 WL 3731459, at *2-4 (E.D. Pa. July 29, 2014); <u>People v. Davis</u>, 6 N.E.3d 709, 722 (Ill. 2014); <u>State v. Ragland</u>, 836 N.W.2d 107, 117 (Iowa 2013); <u>Diatchenko v. District Atty. for Suffolk</u>, 1 N.E.3d 270, 281 (Mass. 2013); <u>State v. Mantich</u>, 842 N.W.2d 716, 730-31 (Neb. 2014), <u>petition for cert. filed</u>, 82 U.S.L.W. 3676 (U.S. May 5, 2014); <u>Ex parte Maxwell</u>, 424 S.W.3d 66, 75 (Tex. Crim. App. 2014).  We recognize that <u>Miller</u> did not categorically ban sentences of life imprisonment without the possibility of parole for juvenile offenders.  <u>See</u> <u>Miller</u>, 132 S. Ct. at 2471.  Nonetheless, "it explicitly foreclosed the imposition of a <u>mandatory</u> sentence of life without parole on juvenile offenders."  <u>Jones</u>,

122 So. 3d at 702; see also Songster, 2014 WL 3731459, at *4 (concluding that Miller announced a new substantive rule, in part, because it "bans a sentencing practice or a scheme as applied to all juveniles convicted of murder"). By prohibiting the imposition of mandatory sentences and requiring that the sentencing authority "have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles," Miller, 132 S. Ct. at 2475, Miller changed the permissible punishment for juveniles convicted of homicide. See Jones, 122 So. 3d at 702; Mantich, 842 N.W.2d at 730; Maxwell, 424 S.W.3d at 75. As the Nebraska Supreme Court explained:

> Miller did not simply change what entity considered the same facts. And Miller did not simply announce a rule that was designed to enhance accuracy in sentencing. Instead, Miller held that a sentencer must consider specific, individualized factors before handing down a sentence of life imprisonment without parole for a juvenile. Effectively, then, Miller required a sentencer of a juvenile to consider new facts, i.e., mitigation evidence, before imposing a life imprisonment sentence with no possibility of parole. . . . In other words, it imposed a new requirement as to what a sentencer must consider in order to constitutionally impose life imprisonment without parole on a juvenile.

Mantich, 842 N.W.2d at 730.

The State maintains that the Supreme Court's statement in Miller that its decision "does not categorically bar a penalty for a class of offenders or type of crime," but "[i]nstead, . . . mandates only that a sentencer follow a certain process," Miller, 132 S. Ct. at 2471, evinces the Court's intent that Miller not be regarded as a substantive rule. See Craig v. Cain, No. 12–30035, 2013 WL 69128, at *2 (5th Cir. Jan. 4, 2013) (concluding that "Miller does not satisfy the test for retroactivity because it does not categorically bar all sentences of life imprisonment for juveniles"); see also In re Morgan, 713 F.3d 1365, 1368 (11th Cir. 2013); Malvo, 2014 WL 2808805, at *15-16; Johnson v. Ponton, Civil Action No. 3:13–CV–404, 2013 WL 5663068, at *5 (E.D. Va. Oct. 16, 2013); Williams v. State, No. CR–12–1862, 2014 WL 1392828, at *14-15 (Ala. Crim. App. Apr. 4, 2014); Geter v. State, 115 So. 3d 375, 384-85 (Fla. Dist. Ct. App. 2013); State v. Tate, 130 So. 3d 829, 836-37 (La. 2013), cert. denied, 134 S. Ct. 2663 (2014); People v. Carp, Docket Nos. 146478, 146819, 147428, 2014 WL 3174626, at *___ (Mich. July 8, 2014); Chambers v. State, 831 N.W.2d 311, 328-30 (Minn. 2013); Com. v. Cunningham, 81 A.3d 1, 10-11 (Pa. 2013), cert. denied, 134 S. Ct. 2724 (2014). The respondents disagree, and contend that the State "reads too much into that statement, given its context." We believe, however, that, given its context, the State reads the statement too narrowly.

8

When read in context, the statement does not support the conclusion that the <u>Miller</u> rule is procedural; to the contrary, it supports the conclusion that the rule is substantive. Although there is a procedural element to the rule in that it "mandates . . . that a sentencer follow a certain process," that procedural element is the result of the Court's substantive change in the law prohibiting mandatory life-without-parole sentencing for juveniles because "youth matters for purposes of meting out the law's most serious punishments." <u>Miller</u>, 132 S. Ct. at 2471; <u>see</u> <u>Davis</u>, 6 N.E.3d at 722. We cannot see how such a rule could be anything other than substantive. Indeed, to hold otherwise would create "a significant risk that a defendant . . . faces a punishment that the law cannot impose upon him." <u>Schriro</u>, 542 U.S. at 352 (quotation omitted); <u>see</u> <u>Jones</u>, 122 So. 3d at 702.

The decision of the Supreme Court in <u>Schriro</u> regarding the retroactivity of the rule announced in <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), supports our conclusion. <u>See</u> <u>Schriro</u>, 542 U.S. at 353. "<u>Ring</u> held that a sentencing judge, sitting without a jury, may not find an aggravating circumstance necessary for imposition of the death penalty. Rather, the Sixth Amendment requires that those circumstances be found by a jury." <u>Id</u>. at 353 (quotations, citation, and brackets omitted). In <u>Schriro</u>, the Supreme Court explained:

> [The <u>Ring</u>] holding did not alter the range of conduct [the] law subjected to the death penalty. It could not have; it rested entirely on the Sixth Amendment's jury-trial guarantee, a provision that has nothing to do with the range of conduct a State may criminalize. Instead, <u>Ring</u> altered the range of permissible methods for determining whether a defendant's conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules, a conclusion we have reached in numerous other contexts.

<u>Id</u>.

Unlike the holding in <u>Ring</u>, the <u>Miller</u> rule does more than merely "regulate . . . the manner of determining the defendant's culpability." <u>Id</u>. (emphasis omitted). <u>Miller</u> provides discretion in sentencing where there once was none. <u>See</u> <u>Maxwell</u>, 424 S.W.3d at 75. As the trial court here explained, <u>Miller</u> mandates that "a juvenile defendant is required to have the opportunity to establish that life without parole is not an appropriate sentence." <u>See</u> <u>Miller</u>, 132 S. Ct. at 2475. In this way, <u>Miller</u> "broadened the range of punishment for juveniles convicted of homicide." <u>Malvo</u>, 2014 WL 2808805, at *11; <u>see</u> <u>People v. Morfin</u>, 981 N.E.2d 1010, 1022 (Ill. App. Ct. 2012); <u>Davis</u>, 6 N.E.3d at 722. Accordingly, <u>Miller</u> altered the range of outcomes for juveniles convicted of

9

homicide by allowing a sentencer to consider a punishment other than life in prison without the possibility of parole. See Morfin, 981 N.E.2d at 1022.

We also find it noteworthy that, upon rendering its decision in Miller, the Supreme Court reversed the state court decision dismissing Jackson's state petition for habeas corpus relief. See Miller, 132 S. Ct. at 2475. Like the respondents in this case, Jackson was before the Court on collateral review. See id. at 2461. Although, as the State points out, it does not appear that the issue of retroactivity was raised by the state as a bar to relief in the Jackson case, we nonetheless find the Supreme Court's decision regarding Jackson to be significant. As the Supreme Court explained in Teague, "once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." Teague, 489 U.S. at 300. Under this reasoning, "the relief granted to Jackson in Miller tends to indicate that Miller should apply retroactively on collateral review." Morfin, 981 N.E.2d at 1023; see also Songster, 2014 WL 3731459, at *1-2; Davis, 6 N.E.3d at 722; Ragland, 836 N.W.2d at 116; Diatchenko, 1 N.E.3d at 281; Mantich, 842 N.W.2d at 731.

Relying upon Tyler v. Cain, 533 U.S. 656 (2001), the State further contends that Miller is not retroactive to cases on collateral review because "[t]he Supreme Court did not 'hold' that its decision in Miller or Jackson was retroactive to cases on collateral review." See In re Morgan, 713 F.3d at 1367 (citing Tyler and concluding that "the Supreme Court has not held that Miller is retroactively applicable to cases on collateral review"). In Tyler, the Supreme Court interpreted the word "made" in the federal statute which "requires a district court to dismiss a claim in a second or successive [habeas] application unless . . . the applicant 'shows' that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Tyler, 533 U.S. at 660-61. The Court concluded "that a new rule is not 'made retroactive to cases on collateral review'" within the meaning of the statute, "unless the Supreme Court holds it to be retroactive." Id. at 663. The statutory provision interpreted in Tyler is not at issue here, however, and we are not persuaded that the Court's statutory analysis in Tyler as to congressional limitations on the federal courts' habeas corpus jurisdiction has controlling effect "upon the application of the judicially crafted Teague construct as applied in the setting of a state post-conviction petition." Id.; see also Johnson, 2013 WL 5663068, at *3 n.6.

IV.    Conclusion

We conclude that, pursuant to the Teague framework, the rule announced in Miller constitutes a new substantive rule of law that applies retroactively to cases on collateral review. Consequently, we find that the respondents are entitled to the retroactive benefit of the Miller rule in post-

conviction proceedings.  In light of our decision, we decline to address the respondents' argument that we should "apply a broader retroactivity doctrine than the federal courts apply."

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.