NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2018-0104

THE STATE OF NEW HAMPSHIRE

v.

EDUARDO LOPEZ, JR.

Argued: January 14, 2021
Opinion Issued: April 20, 2021

Gordon J. MacDonald, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the brief and orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, by brief and orally, for the defendant.

HICKS, J. The defendant, Eduardo Lopez, Jr., appeals an order of the Superior Court (Smukler, J.) ruling that his sentence of 45 years to life does not constitute the de facto equivalent of lifetime imprisonment in violation of the Eighth Amendment to the United States Constitution. We affirm.

I. Procedural Background

On March 23, 1991, when the defendant was 17 years old, he committed, among other crimes, first degree murder. See RSA 630:1-a (1986) (amended 1990, 2017). The underlying facts of the crimes are set forth in State

v. Lopez, 139 N.H. 309 (1994), and will not be repeated here.  Following his conviction, the defendant received a statutorily-mandated sentence of life imprisonment without the possibility of parole.  See RSA 630:1-a, III.

In 2012, the United States Supreme Court ruled that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."  Miller v. Alabama, 567 U.S. 460, 479 (2012).  Reasoning that a trial court must take into account the attributes of youth before imposing a sentence of life in prison on a juvenile homicide offender, the Court concluded that trial courts must hold individualized sentencing hearings for such juvenile offenders.  See id. at 489.  Thereafter, by writ of habeas corpus, the defendant requested resentencing, arguing that Miller must be applied retroactively.  We affirmed the trial court's determination that Miller applied retroactively, Petition of State of N.H., 166 N.H. 659, 662 (2014), and, subsequently, the Supreme Court reached the same conclusion, Montgomery v. Louisiana, 136 S. Ct. 718, 732 (2016).

Accordingly, in 2017, the trial court held a two-day resentencing hearing at which it heard testimony from the arresting police officer, several members of the murder victim's family, an addiction psychiatrist, a forensic psychologist, several members of the defendant's family, and the defendant.  Following the hearing, taking into consideration the record before it, "the nature and circumstances of the underlying crime, the characteristics of the defendant, and the traditional sentencing factors," the court imposed a sentence of 45 years to life.

In addition, the trial court issued a narrative order addressing the defendant's legal arguments that: (1) a de facto life without parole sentence cannot be imposed unless the trial court first determines, in accordance with Miller, that the defendant is irreparably corrupt; and (2) any minimum sentence exceeding 35 years constitutes a de facto life without parole sentence. In resolving the defendant's arguments, the trial court defined a de facto life sentence "as one that exceeds the defendant's life expectancy."  (Quotation omitted.)

Regarding the defendant's first argument, the trial court noted that although the Supreme Court "has not yet decided the question whether a lengthy term-of-years sentence is, for constitutional purposes, the same as a sentence of life imprisonment without the possibility of parole," courts in several jurisdictions have so decided.  (Quotation omitted.)  The trial court was persuaded by "[a]n apparent majority of courts that have held that a lengthy term of years should be considered the equivalent of a life sentence," based on the reasoning that "one 'cannot ignore the reality that a seventeen year-old sentenced to life without parole and a seventeen year-old sentenced to 254 years with no possibility of parole, have effectively received the same sentence.'" (Quoting Moore v. Biter, 725 F.3d 1184, 1192 (9th Cir. 2013).)  Accordingly, the

2

trial court agreed with the defendant that the imposition of a de facto life sentence would require it to find that he "is 'the rare juvenile offender whose crime reflects irreparable corruption' and not 'transient immaturity.'" (Quoting Montgomery, 136 S. Ct. at 734 (quotation omitted).)

Regarding the defendant's argument that any sentence exceeding 35 years is a de facto life sentence, the trial court recognized that "[t]he obvious difficulty in trying to define what constitutes a de facto life sentence in any given case is that it is impossible to determine precisely how long any one person has to live." (Quotation omitted.) Because both parties "urged the court to look at life expectancy tables—albeit different ones," the trial court assumed without deciding that doing so was "appropriate for a very limited purpose" and agreed to "consider them as one factor in evaluating whether" the sentence it imposed constituted a de facto life sentence.

The State offered the 2014 Centers for Disease Control and Prevention (CDC) National Vital Statistics tables that showed the defendant's life expectancy at his current age to slightly exceed 38 additional years. Under the CDC tables, the trial court found that "if the defendant lives until sixty-two years of age—his age when he becomes parole eligible—his life expectancy would be at least an additional 20 years." The defendant offered a document authored by the American Civil Liberties Union of Michigan (ACLU) titled "Michigan Life Expectancy Data for Youth Serving Natural Life Sentences" that showed the "average life expectancy for Michigan adults incarcerated for natural life sentences in Michigan" to be 58.1 years. (Quotations omitted.) Although the court noted "that the CDC tables do not account for any reduction in life expectancy due to the impact of spending the majority of one's life in prison," it concluded that it could not find that "the effects of incarceration will reduce the defendant's life expectancy from over 38 additional years (under the CDC tables) to only seven years (as suggested by the ACLU document)." (Quotation and brackets omitted.)

The trial court was "persuaded that the CDC tables are authoritative on the issue of life expectancy." The court found that the ACLU document was "entitled to considerably less weight" because, among other things, it was "based on a small population sample in a different State and in a different prison system," and it failed to "take into account the prisoner's current age." Noting that "any life expectancy analysis is imperfect," the trial court found the CDC data "the most reliable alternative presented." The trial court concluded that the 45-year minimum sentence it imposed, "which gives the defendant a meaningful opportunity for release at sixty-two years of age, is not a de facto life sentence" and, therefore, it did not need to find that the defendant was irreparably corrupt.

3

II.  Analysis

On appeal, the defendant argues that the trial court erred as a matter of law in deciding that a 45-year minimum term is not the de facto equivalent of lifetime imprisonment.  He asserts that "[p]roperly interpreted," the applicable Supreme Court jurisprudence "defines lifetime imprisonment not by reference to a defendant's actuarily-projected death, but rather as imprisonment lasting so long that it forecloses a realistic opportunity to seek reconciliation with society through a meaningful life outside prison."  When, as here, the 45-year "period of parole ineligibility" will bar the defendant's release until, at the earliest, age 62, the defendant contends that he will be deprived of "a realistic opportunity to build a meaningful post-prison life."  In addition, he argues, even "if the definition of lifetime imprisonment is tied to a juvenile's actuarily-projected death," the trial court erred by using "life expectancy tables based on the general American population, rather than information focused on the life expectancy of long-term prisoners."

We review questions of constitutional law de novo.  State v. MacElman, 154 N.H. 304, 307 (2006).  We review a trial court's sentencing decision under the unsustainable exercise of discretion standard.  State v. Lambert, 147 N.H. 295, 296 (2001).  To show that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case.  Id.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments."  U.S. CONST. amend. VIII.  The right "not to be subjected to excessive sanctions . . . flows from the basic precept of justice that punishment for crime should be graduated and proportioned to the offense."  Roper v. Simmons, 543 U.S. 551, 560 (2005) (quotations and brackets omitted).

Several recent Supreme Court cases have recognized constitutional limits on the punishment of juvenile offenders.  In Roper v. Simmons, the Court held that the Eighth Amendment prohibits the imposition of the death penalty on a defendant who committed a capital offense when the defendant was younger than 18 years of age.  Id. at 578.  The Court found that, as compared to adults, juveniles have a "lack of maturity and an underdeveloped sense of responsibility"; they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; they have limited "control[] over their own environment"; and their characters are "not as well formed."  Id. at 569-70 (quotation omitted).  Thus, because juveniles are less culpable than adults, the Court determined that "juvenile offenders cannot with reliability be classified among the worst offenders" deserving of the death penalty.  Id. at 569.

4

Five years later, the Court extended the reasoning of Roper to hold that the Eighth Amendment forbids the sentence of life without parole for a juvenile offender who did not commit homicide. Graham v. Florida, 560 U.S. 48, 74 (2010). Relying on Roper, the Court reasoned that "[j]uveniles are more capable of change than are adults, and their actions are less likely to be evidence of irretrievably depraved character than are the actions of adults." Id. at 68 (quotation omitted). Although the Eighth Amendment "does not require the State to release [a juvenile nonhomicide offender] during his natural life," the Court explained that "[w]hat the State must do . . . is give [such] defendants . . . some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Id. at 75. Because a sentence of life without parole "guarantees [the juvenile offender] will die in prison without any meaningful opportunity to obtain release," the Court reasoned that such a defendant has been denied "any chance to later demonstrate that he is fit to rejoin society." Id. at 79. Accordingly, although "[a] State need not guarantee the [juvenile] offender eventual release," the Court ordered that if the State "imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." Id. at 82.

Two years later, in Miller v. Alabama, the Court held that the Eighth Amendment prohibits a mandatory sentence of life without parole for a juvenile offender convicted of homicide. Miller, 567 U.S. at 465. Recognizing that "children are constitutionally different from adults for purposes of sentencing" because of their "diminished culpability and greater prospects for reform," and noting the similarities between life without parole and capital sentences, the Court concluded that a sentencing court must consider the "mitigating qualities of youth" before sentencing a juvenile homicide offender to the law's "harshest possible penalty." Id. at 471, 474, 476, 479 (quotation omitted). Given that mandatory life-without-parole sentences for juvenile homicide offenders "by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it," the Court determined that "such a scheme poses too great a risk of disproportionate punishment" and is thereby forbidden by the Eighth Amendment. Id. at 476, 479.

The Court noted that it was not foreclosing a sentencer's ability to sentence a juvenile homicide offender to life without parole. Id. at 480. Rather, the Court was requiring the sentencer "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id. at 480. The Court explained that its decision "does not categorically bar a penalty for a class of offenders or type of crime—as, for example, [it] did in Roper or Graham. Instead, [Miller] mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty." Id. at 483. The Court recognized that "appropriate occasions" for sentencing juveniles to the "harshest possible penalty" of life without parole

"will be uncommon" given the "great difficulty [it] noted in <u>Roper</u> and <u>Graham</u> of distinguishing at this early age between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." <u>Id</u>. at 479-80 (quotation omitted).

The Court subsequently determined that because <u>Miller</u> announced a substantive rule of constitutional law, its holding was retroactive. <u>Montgomery</u>, 136 S. Ct. at 734. In doing so, the Court confirmed that <u>Miller</u> did not bar a punishment for all juvenile offenders as <u>Roper</u> and <u>Graham</u> did, but that <u>Miller</u> did bar life without parole "for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." <u>Id</u>. The Court stated that "[a] State may remedy a <u>Miller</u> violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them," reasoning that "[a]llowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." <u>Id</u>. at 736. "Those prisoners who have shown an inability to reform," the Court explained, "will continue to serve life sentences," but "[t]he opportunity for release will be afforded to those who demonstrate the truth of <u>Miller</u>'s central intuition—that children who commit even heinous crimes are capable of change." <u>Id</u>.

In sum, pursuant to <u>Graham</u>, a juvenile nonhomicide offender cannot be sentenced to life without the possibility of parole. <u>Graham</u>, 560 U.S. at 74. Pursuant to <u>Miller</u>, a juvenile homicide offender cannot be subjected to a mandatory sentence of life without the possibility of parole. <u>Miller</u>, 567 U.S. at 465. And, pursuant to <u>Montgomery</u>, the holding in <u>Miller</u> is retroactive. <u>Montgomery</u>, 136 S. Ct. at 736. Thus, the case before us in which the defendant, a juvenile homicide offender, was resentenced from a mandatory sentence of life without the possibility of parole to a term of years with the opportunity for parole, complies with the applicable Supreme Court holdings in <u>Miller</u> and <u>Montgomery</u>.

Nonetheless, the defendant argues that in finding his life expectancy to be at least an additional 38 years, the trial court erred in relying on the CDC tables rather than on the life expectancy estimates "supported by the prisoner-based studies." Because "[t]here is no sound reason to suppose that New Hampshire prisoners live much longer lives than prisoners in other states," he asserts that "the sentencing court significantly overestimated" his life expectancy and, therefore, we must remand for resentencing. We disagree.

The trial court considered the life expectancy estimates offered by both parties "as one factor in evaluating whether the forty-five year minimum imposed . . . constitutes a <u>de facto</u> life sentence, thereby triggering the need for a <u>Miller</u>-type analysis." In doing so, it found the ACLU document submitted by the defendant to be entitled to "considerably less weight" than the CDC tables

for several reasons, including: "[u]nlike the ACLU document, the CDC table[s] take[] into account the current age of the person"; the ACLU document "lacks many essential details regarding the inmates' causes of death" and is "based on a small population sample in a different State and in a different prison system"; and "it does not take into account . . . the fact that a prisoner, like the defendant, has survived nearly thirty years of 'risks' while in the prison system." While the court expressly noted that "many courts appear to accept the premise that incarceration has a measurable effect on life expectancy," it also noted that other courts "have identified factors that may increase life span, such as guaranteed food, housing, and healthcare unavailable to some segments of the general population." Based on all of these considerations, the trial court found that the CDC data was "the most reliable alternative presented."

The trial court has broad discretion in choosing the types of evidence on which to rely in imposing sentence. State v. Kimball, 140 N.H. 150, 151 (1995). The trial court's determination that, assuming life expectancy tables are relevant to whether the sentence it imposed was a de facto life sentence, the CDC tables were more reliable than the ACLU document was not clearly untenable or unreasonable to the prejudice of the defendant's case. See Lambert, 147 N.H. at 296. Accordingly, we uphold that determination.

In addition, pointing to language in Montgomery that juvenile offenders are entitled to "hope for some years of life outside prison walls," Montgomery, 136 S. Ct. at 737, and language in Graham about allowing juvenile offenders a chance to demonstrate that they are "fit to rejoin society" and to "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," Graham, 560 U.S. at 75, 79, the defendant asserts that the trial court erred in imposing a sentence that offers "the hope of release only a few years before his actuarily-projected death," thereby precluding him from "a realistic hope of building a meaningful life outside prison."

Even assuming the defendant's interpretations of Graham and Montgomery are correct, we disagree with the factual premise of his argument. The trial court found that "if the defendant lives until sixty-two years of age—his age when he becomes parole eligible—his life expectancy would be at least an additional 20 years." An additional 20 years of life after release from prison does not constitute "only a few years before his actuarily-projected death." Thus, the defendant has failed to demonstrate that the hope for 20 years outside prison walls precludes him from "a realistic hope of building a meaningful life outside prison."

In arguing that "the outer limit on the period of ineligibility must not be drawn beyond thirty-five years," the defendant essentially asks that we extend Miller and create a bright-line rule that the Supreme Court has not announced. The Supreme Court has not recognized, as a matter of constitutional law, that

a term of years sentence of thirty-five years is the <u>de</u> <u>facto</u> equivalent of life without parole, and we decline to create such a rule.

Accordingly, we hold that the trial court did not err in determining that the 45-year-to-life sentence it imposed, under which the defendant has an opportunity to be considered for parole when he is 62 years of age, is not a <u>de</u> <u>facto</u> life sentence under the Eighth Amendment to the Federal Constitution.

<u>Affirmed</u>.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.