**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2018-0662, <u>State of New Hampshire v. Robert Dingman</u>, the court on April 20, 2021, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendant, Robert Dingman, appeals an order of the Superior Court (<u>Nadeau</u>, C.J.) ruling that his sentence of forty years to life is not a <u>de facto</u> life sentence in violation of the Eighth Amendment to the United States Constitution. We affirm.

In 1997, when the defendant was 17 years old, he committed two first degree murders and conspiracy to commit murder. See <u>State v. Dingman</u>, 144 N.H. 113 (1999). Following his conviction, he received two statutorily-mandated sentences of life imprisonment without the possibility of parole for the first degree murder convictions and a sentence of seven-and-a-half to fifteen years for the conspiracy conviction. See RSA 630:1, III (1986) (amended 1990, 2017).

In 2012, the United States Supreme Court ruled that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." <u>Miller v. Alabama</u>, 567 U.S. 460, 479 (2012). Reasoning that a trial court must take into account the attributes of youth before imposing a sentence of life in prison on a juvenile homicide offender, the Court concluded that trial courts must hold individualized sentencing hearings for such juvenile offenders. See <u>id</u>. at 489. Thereafter, by writ of <u>habeas corpus</u>, the defendant requested resentencing, arguing that <u>Miller</u> must be applied retroactively. We affirmed the trial court's determination that <u>Miller</u> applied retroactively, <u>Petition of State of N.H.</u>, 166 N.H. 659, 662 (2014), and, subsequently, the Supreme Court reached the same conclusion, <u>Montgomery v. Louisiana</u>, 136 S. Ct. 718, 732 (2016).

Accordingly, the trial court scheduled a resentencing hearing for October 2018. After receiving notice from the State that it would seek consecutive stand-committed sentences totaling 50 years to life for the two murder convictions, the defendant requested the trial court to rule, prior to the resentencing hearing, that such a sentence is a <u>de facto</u> life sentence, therefore requiring the State to prove, in accordance with <u>Miller</u>, that he is irreparably corrupt. See <u>Montgomery</u>, 136 S. Ct. at 734 (explaining that <u>Miller</u> barred life

without parole "for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility"). Following a hearing on that issue, the court ruled that while "Miller applies to sentences that are the functional equivalent of life without parole," a 50-year-to-life sentence "is not the functional equivalent of a life sentence and therefore does not require the court to find that the defendant's crimes reflect irreparable corruption in order to accept the State's recommended sentence, if it decides to do so at the sentencing hearing."

In reaching its conclusion, the court noted that "a central question in determining whether fifty years to life constitutes a de facto life sentence is whether the defendant will live to the time he is eligible for parole and for how long." Reasoning that "[s]ince most, if not all, juvenile offenders who have been sentenced to serve fifty years to life will not be eligible for release until they are well into their 60s," the court relied "on statistical data to determine, as a general basis, the average life expectancy of the population within the defendant's age group." The State offered the 2014 Centers for Disease Control and Prevention (CDC) National Vital Statistics tables indicating that "individuals in the defendant's age group will live to be approximately 78 to 81 years old." The defendant provided studies from Michigan, New York, and Ontario, Canada on the effect of imprisonment on life expectancy. For several reasons, the court found the CDC tables were "the most reliable" for the "limited extent that the court is considering the life expectancy data to determine whether fifty years to life is a de facto life sentence."

Based on the CDC tables, the trial court determined that the defendant's "eligibility for release at age 67 falls within 11 to 14 years of a juvenile offender's lifetime" and "is not the functional equivalent of a life sentence." The court subsequently denied the defendant's request for reconsideration. Following a three-day resentencing hearing, the trial court imposed two 20-year consecutive sentences for the first degree murder convictions and a consecutive suspended sentence for the conspiracy conviction. This appeal followed.

On appeal, the defendant argues that a stand-committed sentence with a minimum term of 40 years constitutes the de facto equivalent of life imprisonment without parole and therefore cannot be imposed in the absence of a finding of incorrigibility. According to the defendant, the earliest he will be eligible for parole will be at age 57, which would not "afford him a realistic opportunity to build a meaningful post-prison life." He asserts that the Federal Constitution "permits no more than thirty years, as an upper limit on the period of parole ineligibility for a non-incorrigible juvenile offender."

In State v. Lopez, 174 N.H. ___ (decided April 20, 2021), we considered, and rejected, essentially the same arguments raised by the defendant in this appeal. We observed that under Miller, a juvenile homicide offender cannot be subjected to a mandatory sentence of life without parole, Miller, 567 U.S. at 465, and that under Montgomery, the holding in Miller is retroactive,

Montgomery, 136 S. Ct. at 736. See Lopez, 174 N.H. at ___. Thus, in this case, as in Lopez, because the defendant was resentenced from a mandatory sentence of life without the possibility of parole to a term of years with the opportunity for parole, the sentence complies with the applicable Supreme Court holdings. See id.

Likewise, we decline the defendant's invitation to establish a bright-line rule that, under the Federal Constitution, "the outer limit on the period of parole ineligibility" is 30 years. As we explained in Lopez, doing so would extend Miller beyond the Supreme Court's holding, which we decline to do. See id.

Alternatively, the defendant argues that the trial court erred "for it used life expectancy tables based on the general American population, rather than information focused on the life expectancy of long-term prisoners." According to the defendant, the trial court "should have gauged [his] life expectancy as much shorter than seventy-eight to eighty-one years, and much more in line with the estimates supported by the prisoner-based studies." We disagree.

The trial court found that "the studies submitted by the defendant consider only a small sample of individuals in other states and another country while the CDC tables consider the national population in the United States, including prisoners and residents of New Hampshire." In addition, "[b]ecause the CDC tables take into account the entire population," the court found they contain "the most accurate information available to determine the general life expectancy of someone in the defendant's age group." The trial court has broad discretion in choosing the types of evidence on which to rely in imposing sentence. State v. Kimball, 140 N.H. 150, 151 (1995). We conclude that the trial court's determination that the CDC tables "provide a more reliable picture of the average life expectancy" than the studies offered by the defendant was not clearly untenable or unreasonable to the prejudice of the defendant's case. See State v. Lambert, 147 N.H. 295, 296 (2001).

Affirmed.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

3